UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERDIST MITCHELL, JR.,

   Plaintiff,

Case No. 1:08-CV-143

Hon. Robert J. Jonker

v.

BRETT BARBIER, DONNA FRITZ,
G. SMITHSON, MARK MALONE,
and SHIRLEE HARRY,

   Defendants.
_____/

**REPORT AND RECOMMENDATION**

   This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment filed by defendants Brett Barbier, Donna Fritz, G. Smithson and Shirlee Harry (docket no. 30).[1]

   **I.**  **Background**

   Plaintiff's complaint sets forth the following allegations of events that occurred while he was a resident at the Muskegon Correctional Facility (MCF). On November 5, 2006, plaintiff filed a grievance complaining that his cellmate snored and refused to take showers, and that the corrections officers would not move him to another cell. *See* grievance MCF 06110082403c ("3c"), attached to plaintiff's brief as Exh. C. The grievance coordinator dismissed the grievance and "verbally answered" it instead of sending it on to defendants Resident Unit Manager (RUM) Brett Barbier, Assistant Resident Unit Supervisor (ARUS) Donna Fritz and Assistant Deputy Warden (ADW) Mark Malone. Compl. at ¶¶ 12-13. On November 9, 2006, plaintiff spoke with ARUS

---

[1] The court notes that defendant Mark Malone has not yet been served in this action.

Fritz about the room move. Fritz referred plaintiff to RUM Barbier, whose response to plaintiff was "now you're sending kites in on me now?" [sic]. *Id.* at ¶ 14. When plaintiff asked about the move, Barbier's response was "lock-up, go to the hole, I don't care" [sic]. *Id.* Plaintiff alleges that these statements were an attempt to harass and intimidate him for reporting Fritz and Barbier to their supervisors.

On November 16, 2006, plaintiff asked ADW Malone about a kite he sent Malone regarding a room move. *Id.* at ¶ 15. ADW Malone stated that he never answers kites but "just returns them back to the RUM and ARUS to take care of." *Id.* Plaintiff alleges that Malone took these actions in concert with the other defendants "to prevent plaintiff from challenging the illegal, unconstitutional, and retaliatory actions by the other defendants." *Id.* Plaintiff filed a step one grievance on November 18, 2006, MCF 06110086003e ("3e"), in which he complained that ADW Malone, RUM Barbier, ARUS Fritz and unnamed others were deliberately indifferent to plaintiff's problem of having to endure "the abusively foul body smell" of his cellmate. *Id.* at ¶ 16. On November 26th, plaintiff sent a complaint to Warden Shirlee Harry "concerning Barbier and Fritz's refusal to make room move of a reasonable nature because of his reporting them to their supervisor." *Id.* at ¶ 18.

On November 28th, plaintiff was moved to a different cell, 1-235-B, and roomed with prisoner Riley. *Id.* at ¶ 20. At this time, ADW Malone advised plaintiff that five weeks was a reasonable time period to arrange a move. *Id.* About two weeks later, on December 11th, plaintiff spoke with ARUS Fritz about a conflict with prisoner Riley and unspecified threats made by Riley. *Id.* at ¶ 21. At about this time, plaintiff filed a Step II appeal of 3e, in which he alleged that the "grievance was resolved in part and that staff was retaliating against plaintiff when they moved

plaintiff with Riley." *Id.* On December 19th, plaintiff spoke with defendants Barbier and Fritz about an ongoing conflict with Riley. *Id.* at ¶ 22. At this time, Barbier told plaintiff that he did not care about the conflict and Fritz said that she was not going to move plaintiff because he tried to tell her how to do her job. *Id.*

On December 20, 2006, plaintiff wrote to Warden Harry requesting an investigation of RUM Barbier's and ARUS Fritz's conduct, complaining that the two defendants violated his right to humane treatment and living conditions. *Id.* at ¶ 23. Then, on December 25th, plaintiff wrote to Governor Granholm, Michigan Department of Corrections (MDOC) Director Caruso and "the Civil Service Commission" alleging that defendants Barbier and Fritz retaliated against him for utilizing the grievance process. *Id.* at ¶ 24.

On December 28th, prisoner Riley starting typing in the cell at 12:15 a.m. *Id.* at ¶ 25. When plaintiff got out of bed, Riley threatened his life if he notified the unit officers. *Id.* Plaintiff left the cell and alerted the officers, who called defendant Captain Gregory Smithson to the unit. *Id.* Plaintiff, Riley and Captain Smithson met to discuss the problem until 2:30 a.m. *Id.* Smithson said he could move plaintiff but that was not his job. *Id.* Plaintiff alleges that Smithson knew of the conduct of the other defendants, but "failed to take any action to remedy, prevent or correct the illegal, unconstitutional and retaliatory practices of the other defendants." *Id.*

On December 29th, plaintiff wrote a letter to ADW Malone about his problem with Riley and that defendants Barbier and Fritz had left him "in a hostile environment." *Id.* at ¶ 26.

Then, on January 5, 2007, plaintiff was called into Barbier's office and asked if he wrote the letter to the ADW Malone. *Id.* at ¶ 27. When plaintiff admitted writing the letter, Barbier had plaintiff arrested, sent to administrative segregation, and charged him with a major misconduct

3

of threatening behavior. *Id.* Plaintiff alleges that this major misconduct was issued in retaliation "for Plaintiff's exercising his rights to grievance process [sic], and for Plaintiff having written a series of letters addressed to defendants pertinent to the subject matter of Plaintiff's complaint." *Id.*

On January 25, 2007, plaintiff was found guilty of the misconduct and sentenced to five days toplock. *Id.* at ¶ 29. He was subsequently reclassified to Level IV and transferred to the Saginaw Correctional Facility. *Id.* at ¶¶ 30-31.

Plaintiff's complaint consists of four counts brought against all defendants pursuant to 42 U.S.C. §§ 1983, 1985 and 1986. In Count I, brought pursuant to § 1983, plaintiff alleges that defendants violated his First Amendment rights by retaliating against him for utilizing the prisoner grievance system. In Count II, also brought pursuant to § 1983, plaintiff alleges that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. In Count III, plaintiff alleges that the five defendants, by harassing and discriminating against him, conspired to violate his federal constitutional rights in violation of 42 U.S.C. § 1985. In Count IV, plaintiff alleges that defendants' conspiracy violated 42 U.S.C. § 1986. Plaintiff seeks compensatory and punitive damages.[2]

## II.  Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v.*

---

[2] Although plaintiff's complaint is entitled "Complaint for Equitable Relief and Damages," he does not seek any equitable relief.

*Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### III.     Plaintiff's failure to exhaust administrative remedies

#### A.     Exhaustion requirement

First, defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56 on the ground that plaintiff's claims are unexhausted.  The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.  In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' " *Jones*, 127 S.Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003),[3] sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, e.g., the regional health administrator for a medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.

---

[3]The MDOC amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

*Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved ...." *Id.* In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, the grievance may be submitted directly to Step III. *Id.* at ¶ S. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.*

### B. The grievances

Defendants contend that plaintiff's claims against Captain Smithson and Warden Harry, as well as the conspiracy claims against all defendants, are unexhausted and that they are entitled to summary judgment on those claims. Defendants contend that plaintiff exhausted only one grievance relating to these claims, which they identify in one exhibit as 3e and in another exhibit as MCF 061186003f ("3f"). *Compare* Defendants' Exhs. C and E. In demonstrating exhaustion, defendants have presented the Step I grievance and a portion of the Step II appeal filed in 3e, with the Step III response for grievance 3f. Defendants' Exh. C. While defendants refer to the Step III response for 3f as the MDOC's response to the issues raised in 3e, they have not provided the court with an explanation for the numbering discrepancy.

In his response, plaintiff contends that he filed three grievances related to this matter: 3c (incident date October 29, 2006); 3e (incident date November 16, 2006) and 3f (Step III response

7

dated February 21, 2007). Plaintiff admits that he did not exhaust 3c. However, plaintiff's concession does not affect the outcome of defendants' pending motion, because he does not rely on this particular grievance of an incident that occurred in October 2006 to support his claims. Rather, the complaint is based upon grievances 3e and 3f which relate to events that occurred in November 2006.

In 3e, plaintiff names RUM Barbier, ARUS Fritz and ADW Malone, as well as several other non-parties, alleging that these individuals refused to transfer him to another cell. This grievance does not name defendants Captain Smithson and Warden Harry, nor reference a conspiracy among the defendants. As previously discussed, defendants contend that plaintiff did not exhaust his claims against Captain Smithson, Warden Harry or the alleged conspiracy in this grievance. The court would agree with defendants *but for* the discrepancy in the MDOC records regarding 3e and 3f.

Neither plaintiff nor defendants have provided the Step I grievance for 3f. Consequently, the individuals named in that grievance are unknown. Defendants did not respond to plaintiff's contention that 3e is a separate grievance from 3f. Rather, defendants have presented the Step III response to 3f as the Step III response for 3e. *Id.* To further complicate matters, defendants have submitted records from the MDOC that contradict their claim that plaintiff exhausted 3e. An affidavit from the manager of the MDOC's Grievance Section states that plaintiff exhausted 3f, with no mention of 3e. *See* James Armstrong Aff. at ¶ 16 and Grievance Inquiry, Defendants' Exh. E.

In summary, questions of fact exist with respect to whether any of the defendants were named in 3f, whether plaintiff exhausted 3e, and why defendants included a Step III response

8

to 3f as the Step III response to 3e. Accordingly, defendants' motion for summary judgment should be denied with respect to the exhaustion claim.

### IV. Plaintiff's § 1983 claims

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

#### A. First Amendment retaliation claim

Here, plaintiff alleges that defendants Barbier and Fritz retaliated against him when they refused to change his room assignment in the first instance. Plaintiff does not allege that defendants Smithson or Harry played any role in this retaliation. To prove a First Amendment retaliation claim, plaintiff must establish three elements: "1) the plaintiff engaged in activities protected by the Constitution or statute; 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that this adverse action was taken at least in part because of the exercise of the protected conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). *See also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

Plaintiff alleges that the retaliation arose from the filing of a grievance. "Lawful incarceration brings about the necessary withdrawal of or limitation of many privileges and rights,

a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 344 U.S. 266, 285 (1948). However, a prison inmate retains certain First Amendment rights that are not inconsistent with his status as a prisoner or with legitimate penological objectives. *See Pell v. Procunier*, 417 U.S. 817, 822 (1973). These retained First Amendment rights include the right to file grievances against prison officials. *Smith*, 250 F.3d at 1037; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996).

Defendants contend that plaintiff has not alleged any facts to demonstrate that he engaged in protected conduct prior to defendants' alleged refusal to change his cell assignment. The court agrees. The earliest grievance, MCF 06110082403c, was dated November 5, 2006, and complained that defendants Fritz, Barbier, Malone and others failed to move him to a new cell despite the fact that he turned in a "move slip" on October 31, 2006. Plaintiff does not allege that he filed a grievance against these defendants prior to that date. On the contrary, it was defendants' failure to move plaintiff that led to the filing of the November 5, 2006 grievance.

In addition, the court agrees with defendants that their alleged refusal to immediately grant plaintiff's request for a new cell assignment was not an "adverse act" for purposes of a First Amendment retaliation claim. "[S]ome adverse actions are so de minimis that they do not give rise to constitutionally cognizable injuries." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). "It would trivialize the First Amendment to allow plaintiffs to bring First Amendment retaliation claims for *any* adverse action no matter how minor." *Id.* (internal quotation marks omitted) (emphasis in original). *See also*, *Mattox v. City of Forest Park*, 183 F.3d 515, 521 (6th Cir. 1999) ("a constitutional tort-like any tort-requires injury, and allowing constitutional redress for every minor harassment may serve to trivialize the First Amendment").

MDOC Policy Directive 03.03.130 requires staff to protect prisoners from mental or physical abuse from other prisoners, providing in pertinent part that:

> The cell or room assignment of prisoners shall be regulated to prevent manipulation by other prisoners. Cell or room changes should be made only on the basis of program need or facility security, or for good order of the housing unit, as determined by housing staff. A prisoner shall be placed in a single occupancy cell when necessary to ensure the safety of the prisoner or others.

MDOC Policy Directive 03.03.130.I.3. The Policy Directive also states that prisoners shall be provided reasonable safety from assaults. *Id.* at 03.03.130.I.3.

The court does not view plaintiff's failure to receive immediate transfers from a snoring, odoriferous or night-typing cellmate as giving rise to constitutionally cognizable injuries. These situations involve relatively minor inconveniences, not dissimilar to disputes between roommates in a school dormitory or military barracks. "[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347. Even if defendants had refused to transfer plaintiff in retaliation for his protected conduct, and the court does not find this to be the case in this instance, their adverse action was *de minimis* and did not give rise to constitutionally cognizable injuries. *See Bell*, 308 F.3d at 603. Accordingly, defendants Barbier, Fritz, Smithson and Harry are entitled to summary judgment with respect to plaintiff's First Amendment retaliation claim.

### B. Eighth Amendment claim

The Supreme Court has held that "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)); *see also*

*Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993) . However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). As previously discussed, plaintiff suffered *de minimis* injuries or unpleasant experiences from his cellmates' snoring, bad smell and nighttime typing. For the reasons stated in § IV.A., any such *de minimis* injuries fail to rise to the level of an Eighth Amendment violation. Defendants Barbier, Fritz, Smithson and Harry are entitled to summary judgment with respect to plaintiff's Eighth Amendment claim.

**V. Conspiracy claim under 42 U.S.C. §§ 1985(3) & 1986**

Finally, plaintiff alleges that defendants engaged in a conspiracy to deprive him of certain constitutional rights pursuant to 42 U.S.C. §§ 1985(3) and 1986. In Count III, plaintiff alleges that defendants conspired to deprive him of equal protection under the law pursuant to § 1985(3), which prohibits persons from conspiring "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ." Section 1985(3) further provides that "in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

"To establish a claim under 42 U.S.C. § 1985(3), a plaintiff must prove (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly,

a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." *Johnson v. Hills & Dales General Hospital*, 40 F.3d 837, 839 (6th Cir. 1994) (footnote omitted). In addition, a § 1985(3) claim requires a plaintiff to demonstrate that the conspiracy was motivated by a class based animus, such as race. *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998); *Johnson*, 40 F.3d at 839.

In Count IV, plaintiff alleges that defendants neglected to prevent such deprivation pursuant to § 1986, "Action for neglect to prevent," which provides in pertinent part as follows:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured . . . for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action . . . But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

Here, plaintiff has set forth no facts to demonstrate that the alleged conspiracy was motivated by a class-based animus. In addition, as the court previously discussed, plaintiff suffered at most *de minimis* injuries that did not rise to the level of a federal constitutional deprivation. Accordingly, plaintiff has failed to establish a claim for conspiracy under § 1985(3). In the absence a violation under § 1985(3), plaintiff cannot establish a violation of § 1986. *Seguin v. City of Sterling Heights*, 968 F.2d 584, 590 (6th Cir. 1992) ("Section 1986 imposes liability on those individuals who have knowledge of any of the wrongs prohibited by section 1985, yet fail to prevent them. Without a violation of section 1985(3), there can be no violation of section 1986").

Accordingly, defendants Barbier, Fritz, Smithson and Harry are entitled to summary judgment with respect to plaintiff's § 1986 claim.

### VI.     Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 30) be **GRANTED** and that defendants Barbier, Fritz, Smithson and Harry be dismissed from this action.

Dated:  January 14, 2009                              /s/ Hugh W. Brenneman, Jr.
                                                      HUGH W. BRENNEMAN, JR.
                                                      United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within eleven (11) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).